## THOMAS A. GAREY v. THE CITY OF GALVESTON.

1. REPEAL OF CITY CHARTER—EFFECT ON ORDINANCES THEN IN FORCE. The repeal of the former City Charter by the present Act incorporating the city of Galveston, did not operate as an immediate or absolute repeal of all ordinances adopted by the city under and while its former Charter was in full force and effect.

2. ASSESSMENTS UNDER REPEALED CHARTER. The assessments under an ordinance passed for the assessment of taxes under the former Charter, is a sufficient assessment to collect a tax levied by the city after the date of its new Charter.

3. REPEAL OF CITY CHARTER. Only such ordinances as are inconsistent with the new Charter are rendered invalid by its enactment.

4. RETRO-ACTIVE LAW. An Act validating bonds which were issued by the city of Galveston, called the "Bridge Tax," and authorizing the levy of a tax for interest and sinking fund, is not retro-active or prohibited by the Constitution.

5. EXCESSIVE TAX. The present City Charter, limiting taxation to one per cent. *ad valorem*, is violated by an ordinance levying one per centum for general revenue, and one-fourth of one per cent. Bridge Tax, for 1871, and such excessive levy is a nullity.

6. THE CONTRACT—INTEREST AND SINKING FUND. Had it been shown that the Bridge Tax entered into and formed part of the contract with the bondholders, still, in view of the express limitation of the *power to tax* for general revenue, the power to tax would be regarded as limited to one per cent., less the Special Bridge Tax.

APPEAL from Galveston. Tried below before the Hon. A. P. McCormick.

November 8, 1872, the city of Galveston brought suit against Thomas A. Garey, to recover the following named taxes for the year 1871, to wit : an *ad valorem* tax of one per cent., levied under an ordinance of June 20, 1871, for general purposes, assessed against the defendant in the sum of one hundred and seven dollars ; an *ad valorem* tax of one-fourth of one per cent. levied under said ordinance, to pay the interest on the " Bridge Tax," and to create a sinking fund to retire the same, with ten per cent. interest on same from June 5, 1872.

The ordinance of June 20, 1871, was made an exhibit, and its provisions as, to the assessment are as alleged in the petition.    The specific property upon which the tax was claimed, was also described in a certificate from the city assessor, from the assessment rolls for 1871, and made an exhibit.

Defendant demurred, and for special exceptions urged :

*First.* Want of authority to bring suit.

*Second.* Absence of any ordinance of the city directing and prescribing the mode and manner of assessing and collecting the city taxes.

*Third.* Absence of any ordinance by authority of which any debt against the city was incurred for or on account of the matters set out in the petition.

*Fourth.* Want of allegations that bonds were issued by the mayor, etc., for the construction of a bridge from Galveston Island to the mainland ; nor what amount of bonds, if any, were issued ; nor what amount of bonds are outstanding.

*Fifth.* Because the assessment of one and one-fourth of one per cent. is in excess of the limit of taxation prescribed by the city charter.

By amendment plaintiff alleged that the " Bridge Tax " was levied in accordance with and by virtue of an Act of the Legislature, entitled, " An Act to empower the mayor, alder- " men and inhabitants of the city of Galveston to issue bonds " for the construction of a bridge from the Island of Galveston " to the mainland, in aid of the Galveston, Houston and Hen

" derson Railroad, and to validate the bonds by them issued,
" or to be issued for such purpose, and to impose a tax to pay
" interest on said bonds, and to provide a fund to meet said
" bonds when due." Enacted January 20, 1860. Sections 1
and 2 of which are as follows:

" Section 1. *Be it enacted by the Legislature of the State of*
" *Texas*, That the bonds of the corporation of the city of Gal-
" veston, issued and to be issued, in pursuance of the Acts of
" the people of said city, of 19th May, 1857, and the interest
" coupons of the same, be and the same are hereby declared
" valid and binding upon the mayor, aldermen and inhabitants
" of the city of Galveston, and that the same are and shall
" continue to be a valid and subsisting debt of said corpora-
" tion, and may be sued upon when due and payment enforced,
" as in case of other legal obligations in any court having juris-
" diction of the amount.

" Section 2. That the corporate authorities of the city of
" Galveston shall have and are hereby invested with the power
" to impose and assess as other taxes, and collect, a special tax
" of one-fourth of one per centum per annum on all the prop-
" erty, real and personal, not exempt by law from taxation,
" and being in the limits of said city, for the purpose of pay-
" ing the accruing interest on said bonds, and to provide a
" fund for retiring the same when due."

It was further alleged that the bridge tax was levied in ac-
cordance with an ordinance of the city, enacted 21st May, 1860
(being Section 61 of the Revised Ordinances as revised by
Branch T. Masterson), and which is as follows:

" There shall be levied and collected for the municipal year
" 1860, and annually thereafter, a tax of one-fourth of one per
" centum on the assessed value of all real and personal property
" in the city of Galveston, to be applied and appropriated to
" the liquidation of the principal and interest of the city bonds,
" issued for the construction of the railroad bridge across the
" Bay of Galveston on the line of the Galveston, Houston,
" and Henderson Railroad; said tax to be assessed and

" collected in the same manner as the other taxes of the " city."

It was further alleged, that bonds were issued for the purpose named, and which are unpaid, and that the tax was necessary and essential to pay the said debt and interest.

That the passage of said special act and said ordinance, and the issuance of said bonds, constituted a contract between the holders of said bonds and the city, and under which it was obligatory on the city to assess and levy the tax of one-fourth of one per cent.

It was further alleged, that the manner of making the assessment of said taxes (one per cent. general revenue and the bridge tax) was in accordance with, and by virtue of an ordinance of the city of Galveston, of May 7, 1866, and set out in an exhibit.

And that said suit was brought in accordance with an ordinance of the city, passed October 8, 1872, which was made an exhibit. This ordinance provided in detail for suit against delinquent taxpayers, and to subject the property to the taxes levied thereon.

The demurrer and exceptions of the defendant were overruled, and judgment was rendered for plaintiff for the tax and interest, and ordering sale of the real estate to pay the judgment.

On the trial the plaintiff proved the ordinance imposing the taxes for 1871, as alleged; assessment roll of taxes for the year 1871, made out by J. E. McCowan, then city assessor, and certified copy of same, from a revision of the city ordinances, adopted May 11, 1872; a section on " Duties of the Assessor " and Collector of Taxes," recited as passed and approved April 30, 1866.

Chs. H. Leonard, the collector of taxes for the city of Galveston, testified that the city assessment roll was turned over to him in June, 1871, after it had been completed by the city assessor of taxes. Witness had demanded the taxes of the defendant, who had refused payment.

The special Act authorizing the issuance of the bonds of
20th January, 1860, was set out above.

It was proved that the bridge bonds had been issued, and
some were outstanding, and that the general revenue of the city
was insufficient to pay said interest, etc.

The other ordinances referred to in petition were read.

The defendant proved that the ordinance concerning the
assessor and collector of taxes, and providing for the mode and
manner of assessing and collecting city taxes, was passed May
7, 1866.   That said ordinance was the only one for the assess-
ment and collection of city taxes in existence, until the enact-
ment and passage of an ordinance for the assessment and col-
lection of taxes on 4th June, 1872.

By Branch T. Masterson, that the ordinance on " Assess-
"ment," etc., and printed in his revision of the city ordinances
as " approved 30th April, 1866," was originally passed 7th May,
1866, and that he had altered it and changed it so as to make
it conform to the present city charter.

The Act of May 16, 1871, entitled, " An Act to incorporate
"the city of Galveston, and to grant a new charter to said city,
"and to repeal all Acts heretofore passed, incorporating said
" city, which may be in force by virtue of any existing char-
" ter," provides—

Title V., Article 1, Section 1.   " The City Council shall have
" power within the city, by ordinance, to annually levy and
" collect taxes not exceeding one per cent. on the assessed
" value of all real and personal estate and property in the city
" not exempt from taxation by the Constitution of the State."

The former charter was repealed by this Act, *from and
after its passage.*

*L. E. Trezevant,* for appellant.   It does not appear from
plaintiff's petition that the city of Galveston had any power to
create the bridge debt.   It appears on the contrary that it had
no such power ; that the creation of the said debt was *ultra
vires.*   It is submitted that the Act of the Legislature could

not, under Section 14, Article 1, of the Constitution of 1845, forbidding the enactment of retroactive laws, have the effect to give the city the power to levy a tax to pay interest, etc., on bonds issued without authority of law ; certainly not on those bonds issued before the passage of said act. (Sedgwick, 143, notes.)

Appellant demurred specially that plaintiff's petition does not allege what amount of bonds were issued, nor what bonds, if any, are outstanding liabilities against the city of Galveston.

The petition should have contained this allegation, so that the court might know whether or not the issuance of the bonds was excessive, or was for the proper amount and in accordance with the contract for the construction of the bridge ; so that the court might know whether or not there was a subsisting debt against the city for the payment of which the tax was levied ; so that the court know whether or not the power of the city to levy the tax had been exhausted.

The allegation that the collection of the tax is necessary and essential to pay the said debt and interest, is only the opinion of the pleader, and gives no information as to the necessity for the collection of the tax sued for.

Appellant demurred specially, in substance, that the levy of the tax of one per cent. and one-fourth of one per cent. is in excess of the limit prescribed by Section 1, Article 1, Title 5, of the Charter. That Section is as follows : " The City Council " shall have power, within the city, by ordinance, to annually " levy and collect taxes, not exceeding one per cent. on the as- " sessed value of all real and personal estate and property in " the city," etc., etc.

It is evident that in this restriction upon the taxing power of the city, the Legislature considered that the exercise of the power within the limit prescribed was all-sufficient for the legitimate purposes and wants of the city, then existing, and that might thereafter arise.

It is submitted that, if the bridge tax be held to have been

legally levied, then under this restriction in the charter, the City Council had no authority to levy for general purposes for the year 1871 a tax exceeding three-fourths of one per cent. (Dillon, Sections 610 and 107.) And that the tax of one per cent. being in excess of the limit prescribed by the charter, the levy is illegal and void, and the city has no right to re-cover this tax or any part of it. See Joyner v. Egremont, 3 Cush., 567, which was a suit to recover a tax levied in excess of the limit prescribed by law, and therefore held illegal. See also numerous cases cited in Cooley, 519, and Blackwell on Tax Titles, 159.

We propose to discuss next our second assignment of error, which is, that the court erred in admitting as evidence the or-dinance as set forth in chapter 3 on page —. of the Revised Code of Ordinances.     *     *     *     *     *

Again, as appears from the statement of facts, there was no ordinance for the assessment and collection of taxes other than the ordinance of May 7, 1866, until June 4, 1872. This ordi-nance, passed May 7, 1866, is in conflict with, and repugnant to, the present charter in every particular, and from the begin-ning to the end of it, and was repealed by the present charter.

It was either under the ordinance as originally passed, May 7, 1866, or under that ordinance as changed and mutilated by the compiler, that the assessment roll of taxes for the year 1871 was made. It was under this ordinance that the value of defendant's property was fixed at ten thousand seven hun-dred dollars, and the tax for general purposes was assessed against him at one hundred and seven dollars, and bridge tax at twenty-six dollars and seventy-five cents.

Without this assessment, or a proper assessment, the city of Galveston had no right of action against appellant.

This is true both upon reason and authority. (R. R. Co. v. Com., 1 Bush., 250; Shewalter v. Brown, 35 Miss., 423; People v. Hastings, 29 Cal., 449, approved in Reily v. Lan-caster, 39 Cal., 354; Hews v. Rice, 40 Cal., 255; Blackwell on Tax Titles, chaps. 5 and 6.)

*Walter L. Mann*, for appellee.

MOORE, J. It is unnecessary to give any special considera-
tion to the action of the court on the exceptions to the peti-
tion. Our views on the questions presented by it will be
sufficiently manifest in the consideration given to other points,
in the disposition of the case.

No valid objection has, we think, been shown to the levy of
such taxes by the city as are authorized by its charter, nor was
the objection to the authority of the officer by whom the as-
sessment was made well taken. The repeal of the former
charter by the present Act incorporating the city of Galves-
ton, did not operate as an immediate and absolute repeal and
obliteration of all ordinances adopted by the city, under and
while its former charter was in full force and effect. Only
such of these ordinances as were in conflict with or repugnant
to the new charter were superseded by it. The mere change
of the officer upon whom duties provided for and regulated in
an ordinance were devolved, in no way affected the validity of
such ordinance, or annulled its provisions. Its requirements
and the purposes it was ordained to effect, in all essential par-
ticulars, were as necessary for the interest and well-being of
the corporation after the new charter was granted as before.

Nor has anything been shown to induce us to question the
validity of what are termed the "bridge bonds." The creation
of the debt, and issuance of the bonds, if not expressly author-
ized in the charter of the city, then in force, was nevertheless ex-
pressly sanctioned and approved by an Act of the Legislature.
The Legislature was not restrained from authorizing the levy of
taxes to pay the interest and principal of such bonds by the
constitutional inhibition against the passage of retroactive laws.
It cannot be maintained that the debt was not in furtherance
of a corporation purpose. It was not, therefore, *ultra vires*,
and such a one as could not be created by the corporation with
the sanction of the Legislature.

We are, however, of opinion, the taxes levied under the ordi-

nance exceeded the limit of authority conferred by its charter on the city. Section 1, Article 1, of Title 5, of the present charter, reads: "The City Council shall have power within, the "city by ordinance, to annually levy and collect taxes, not "exceeding one per cent. on the assessed value of all real and "personal estate and property in the city, not exempt from "taxation by the Constitution of the State."

While the repeal of the former charter, under which the bridge or any other debt, due by the city, was created, and its incorporation under a new Act, in no way affected the liability of the city for the payment of such debts, even though its subsequent liability for them had not been expressly declared, as it is in the new charter; still it cannot be held that a mere authorization to raise a specific tax, to pay such debt, remains in force after the new charter takes effect. If it had been made to appear that the levy of a tax of one-fourth of one per cent. until the payment in full of "the bridge debt," had entered into and formed a part of the contract with holders of the bonds, there might arise a different question. But if such is the fact, it is not shown in this case. But even if this had been shown, still, in view of the direct limitation in the charter of the amount of taxes which may be levied by the city, the practical effect would be the same. If a specific tax, one-fourth of one per cent. to discharge this particular debt, should be levied, if so stipulated, a proportional deduction would have to be made in the general levy, so as to keep the annual levy within the limit fixed by the charter.

That the charter must be held to limit the amount of taxes which may be annually levied by the city, on the facts as presented in this case, we think quite obvious. (Joyner v. Egremont, 3 Cush., 567; Cooley, Const. Limit., 519; Black. on Tax Titles.)

The judgement is reversed and the cause remanded.

Reversed and remanded.